## LIMESTONE RURAL TELEPHONE CO. v. BEST.

No. 6105.   Opinion Filed February 29, 1916.

(155 Pac. 901.)

1.    **TELEGRAPHS AND TELEPHONES—Regulation—Jurisdiction of Corporation Commission—Rural Lines.** Section 5, art. 9, of the Constitution of this state provides that all telephone and telegraph lines, operated for hire, shall each, respectively, receive and transmit each other's messages, without delay and discrimination, and make physical connection with each other's lines, under such rules and regulations as shall be prescribed by law or by any commission created by this Constitution, or any act of the Legislature for that purpose.   **Held,** that only telephone lines operated for hire are placed, by article 9 of the Constitution, under the jurisdiction of the Corporation Commission.   Rural or farmers' lines operated on the mutual plan, without any charges or toll for use of the line, are not subject to regulation by the Commission.

2.    **APPEAL AND ERROR—Trial—General Finding—Conclusiveness.** Where the testimony is oral and conflicting, and the finding of the court is general, such finding is a finding of every special thing necessary to be found to sustain the general finding, and is conclusive upon this court upon all doubtful and disputed questions of fact.

*Error from Superior Court, Tulsa County;*
*M. A. Breckenridge, Judge.*

Action by W. C. Best against the Limestone Rural Telephone Company, a corporation. Judgment for plaintiff, and defendant brings error. Affirmed.

*Biddison & Campbell,* for plaintiff in error.

Opinion by ROBBERTS, C. The defendant in error, W. C. Best, commenced this action in the superior court of Tulsa county against the plaintiff in error, the Limestone Rural Telephone Company, a corporation, organized under the laws of this state, praying for a writ of mandamus, requiring said corporation to restore to him connection with its telephone lines, and to furnish him service over the same and all connecting lines and exchanges connected therewith, as required by its charter obligations, the laws of the state, and the rights of the plaintiff.

The case was tried to the court, and the following facts, in substance, were developed by the evidence and the admissions of the defendant: The plaintiff in error, Limestone Rural Telephone Company, is a corporation organized under the laws of this state by a number of persons living in and near the town of Red Fork and the adjacent neighborhood. That a line of wire was constructed by the company from Tulsa to Red Fork, to which was connected certain subscribers, and another line, called the "O. R." line, was built to the town of Fisher, to which was connected phones of subscribers living in that section. That said line was a rural line. That the company had no exchange and no office where the public could or was expected to pay for and obtain service; that for a time next before the trial below, there was no phone in the office of the president, who was in possession of all the records of the company, and which was the admitted headquarters of the company during that time. That sub-

scribers living along the route covered by the line were connected with the main line or wire by side lines or tie wires running from the main line to or through (where more than one residence was supplied by any tie wire) residences of the subscribers. That while the original main and side lines were built by the company, the phones used by the individual subscribers were furnished by the individuals themselves, and not by the company. That under a contract with the Pioneer Telephone & Telegraph Company, the lines entered the exchange of the Pioneer Company at Tulsa, and for a specified charge of 50 cents each month for each subscriber, the subscribers were furnished connections with all the Pioneer Company's local subscribers, and, upon payment of tolls or being charged therewith, the subscribers were furnished with the company's long distance service. That no tolls, charges, or fees were charged to or collected from any person using the lines of the Limestone Rural Telephone Company, except its regular subscribers, who paid a regular charge of 50 cents a month therefor, and that such was the rule whether the conversation originated on the local line of the company or through the connection with the Pioneer Company. The regular charge of 50 cents a month charged to each subscriber, which was retained by the Limestone Rural Telephone Company, was not for profit or for distribution among its stockholders, but for the express purpose of maintaining and keeping up the line. That F. O. Brown, the president of the company, was in the exclusive control of the records of the company and dominated its management. That there was friction between Brown and the defendant in error. That Brown had taken steps, without legal authority from the company, to extend a line south of Red Fork in the oil field, and to raise the

funds wherewith to construct and equip the same by assessment upon, or sale of treasury stock to, the original stockholders. That defendant in error (with other subscribers), whom it was afterwards designed to cut off from connection with the lines, refused to furnish any money for that purpose. That to those persons who did furnish money in order to extend a line in the oil fields or to pay off what was termed such indebtedness, the entire capital stock of the company was issued at around 50 per cent. of its par value. That no certificate had been issued or delivered to defendant in error, and others of his neighbors at the time his line was removed, although they had subscribed for original stock and had paid their money therefor, it being decided by the managers of the company that they had no further interest or rights in the company. That later when they discovered that such action in reference to issuance of stock was illegal, the same was canceled, and the stock subscribed for by the original subscribers was issued and delivered to them. That sundry other parties were in arrears for dues at the time defendant in error was cut off from connection with the lines, but they were not deprived of service, and some of them were not even temporarily disconnected. That the two others whose service was temporarily suspended were W. O. Wooley and A. R. Evans, and they were merely cut loose, the side lines, wire, and posts not being removed or disturbed, whereas the entire wire and all posts beyond the residence and phone of A. R. Evans, who was on the same line as defendant in error, but between him and the main line, was taken down and removed. The posts and wire were hauled to and became a part of the new line in which defendant in error had refused to take stock, and which was the basis of the illegal issuance of the capital

stock above mentioned. That it was only intended to permanently remove the wire and posts which served the defendant in error. That defendant in error demanded to have his connection restored, but was refused, and made application for relief to the Corporation Commission of the State of Oklahoma. That jurisdiction by the Corporation Commission was disclaimed for the reason that said commission exercised no control over mutual companies not operating for profit. That no report was ever made to the Corporation Commission by said company.

At the conclusion of the evidence the court entered an order "finding all the facts and issues in favor of the plaintiff, W. C. Best, and against the defendant, Limestone Rural Telephone Company," directing that a peremptory writ of mandamus issue, commanding the defendant to restore to the plaintiff connections with, and service over, its lines as prayed for in plaintiff's petition. The writ is as follows:

"Upon the hearing of this cause, upon the alternative writ of mandamus heretofore issued, and the return thereto, and the evidence which was submitted to the court, the court finds all the issues in favor of the plaintiff, W. C. Best, and against the defendant, the Limestone Rural Telephone Company, a corporation, and that a peremptory writ of mandamus against the defendant should be issued herein. It is therefore considered, ordered, and adjudged that you, the said Limestone Rural Telephone Company, a corporation, are hereby commanded that immediately after the receipt of this writ, you restore to the plaintiff, W. C. Best, connection to and with the line of the Limestone Rural Telephone Company, running from Tulsa to Fisher, both in Tulsa county, Okla., designated to you as the 'O. R.' line of your company, as existed and obtained on and prior to the 4th day of March, 1913, before said connection was severed by you, and that poles

and wires be rebuilt or erected and strung from the residence of said plaintiff, so as to restore his connection to and connect with said line at the place and in the manner theretofore existing, and so that connection may be made with the telephone instrument of said plaintiff, at his said residence, and that you restore said connection and furnish him service over said lines and with all exchange rights and privileges with the Pioneer Telephone & Telegraph Company at Tulsa enjoyed or allowed your company and its stockholders, and with all other lines of your company. It is further ordered that you pay all costs of action, and that you make due return of this writ, on or before the 1st day of October, 1913, with your action thereunder."

Motion for new trial was overruled, exceptions preserved, and the case brought to this court on error.

Counsel for plaintiff in error submit the following assignments of error as grounds for reversal of the judgment:

"(1) The Corporation Commission was the proper body to pass on the controversy between the plaintiff and defendant.

"(2) The defendant company was not a mutual company, but a company organized 'to build, construct, maintain and operate telephone lines,' and the Corporation Commission is the body to pass on all questions of discrimination, rates, rules, and regulations, and of the right of individuals to telephone service.

"(3) The evidence shows that the telephone company had no funds with which to rebuild the line from Mr. Best's house to the line of the defendant company, and for that reason could not comply with the order of the court.

"(4) The trial court erred in admitting, over the objections of the defendant, certain incompetent and irrelevant evidence in the way of correspondence between plain-

tiff and the members of the State Corporation Commission, which letters were prejudicial to the defendant."

The first two assignments present practically the same question, and will be considered together. The proposition presented is that the plaintiff in error is an ordinary public service corporation, operated for hire and not a mutual company, and therefore the State Corporation Commission had exclusive original jurisdiction of the controversy involved. Just what counsel mean by a "mutual company" is not very plain. We have not been able to find any constitutional or statutory provision making special distinction between an ordinary public service corporation and a "mutual corporation." The trial court, the Corporation Commission, and counsel for both parties seem to recognize such a difference. This distinction seems to arise in designating the particular corporations over which the commission had jurisdiction in such matters as are involved herein. From the records of the commission, introduced at the trial, it appears that that body declined to take jurisdiction of this controversy for the reason that:

"The company is operated for mutual benefits only, and not for profit—is strictly a mutual company, and therefore, not within the jurisdiction of the commission."

This action of the commission was no doubt based on section 5, art. 9, of the Constitution, which is as follows:

"All telephone and telegraph lines, operated for hire, shall each, respectively, receive and transmit each other's messages without delay or discrimination, and make physical connections with each other's lines, under such rules and regulations as shall be prescribed by law, or by any commission created by this Constitution or any act of the Legislature, for that purpose."

The construction of this section came before the court in *Twin Valley Telephone Co. v. Mitchell et al.*, 27 Okla. 388, 113 Pac. 914, 38 L. R. A. (N. S.) 1174, and Justice Williams, speaking for the court, says:

"Only telephone lines 'operated for hire' are placed by article 9 of the Constitution under the jurisdiction of the Corporation Commission. Rural or farmer's lines operated on the mutual plan, without any charges or toll for use of the line, are not subject to regulation by the commission."

The question now is, does this company come within that class of telephone companies not operated for hire? An affirmative answer to that is evidently what was meant by the Corporation Commission, as well as counsel for defendant in error, when they used the term "mutual company." So far as the case at bar is concerned, the answer to that question must be determined by the facts presented in the case. The petition alleges, and the court found as a matter of fact, in substance, that the main line and side lines were built by the company, but the phones were furnished and paid for by the respective users, and not by the company. The court also finds that the lines entered the exchange of the Pioneer Company at Tulsa, and for a specified charge of 50 cents every month for each subscriber they were furnished connections with all the Pioneer Company's local subscribers, and upon payment of tolls or being charged therewith the subscribers were furnished with the company's long distance service; that no tolls, charges, or fees were charged to or collected from any person using the lines of the Limestone Company, except its regular subscribers, who paid a regular charge of 50 cents a month therefor, and that such was the rule whether the conversation originated on the local

line of the company or through the connection with the Pioneer Company; that the regular charge of 50 cents a month, charged to each subscriber, which was retained by the Limestone Company, was not for profit or for distribution among its stockholders, but for the express purpose of maintaining and keeping up the line.

According to the judgment of the court, based upon the findings of fact, the plaintiff in error was not operated for hire, and was not an ordinary public service corporation, but was a "mutual company, operated for mutual benefits only," and therefore not under the supervision nor within the jurisdiction of the Corporation Commission. That result follows as a natural sequence from the general finding of the court. This court in *Brewer v. Black,* 5 Okla. 57, 47 Pac. 1089, laid down the following rule by which the court is guided:

"A general finding includes the finding of all necessary facts to constitute the claim of the party in whose behalf the judgment is rendered; and upon appeal this court will not review the evidence upon which such finding was made to determine its sufficiency."

And in *Bohart v. Mathews,* 29 Okla. 315, 116 Pac. 944, the court again approves that rule, in substance, as follows:

"Where the testimony is * * * oral and conflicting, and the finding of the court is general, such finding is a finding of every special thing necessary to be found to sustain the general finding, and is conclusive upon this court upon all doubtful and disputed questions of fact."

While we do not say that we would have arrived at the same conclusion, if we had been sitting as the trial judge, we do feel that this court would not be justified in setting aside the decision of the lower court upon the

facts as found by it. The findings include every fact necessary to sustain the holding of the trial court on the question of jurisdiction. It should not be disturbed here. The third assignment is that the company had no funds with which to pay the costs and expenses necessary to comply with the mandate. That also includes a question of fact which was necessarily passed upon by the trial court against the contentions of plaintiff in error.

There was some evidence introduced as to the cost of making the connection ordered; also some evidence as to cash on hand and outstanding accounts. The finding of the court in that behalf is conclusive in this court.

The fourth contention of counsel, that the court erred in admitting the certified copies of the letters from the records of the office of the State Corporation Commission, cannot be sustained.

The letters were a part of the public records of the state, and properly admitted in evidence. The effect or weight of evidence contained in the letters was determined by the trial court.

The judgment should be affirmed.

By the Court: It is so ordered.